UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORA A. HARRISON BARKEY, #73378,<br><br>Plaintiff,<br><br>v.<br><br>BRENT REINKE, JAMES MELIN, and BRIAN UNDERWOOD,<br><br>Defendants. | Case No. 1:07-CV-471-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court in this prisoner civil rights matter is Plaintiff's Motion for Summary Judgment (Dkt. 46) and Defendants' Motion for Summary Judgment (Dkt. 47). After considering the parties' written arguments, and the relevant portions of the record, the Court will deny Plaintiff's Motion for Summary Judgment against Defendant Underwood on Counts I and II and grant in part and deny in part Defendants' Motion for Summary Judgment.

## BACKGROUND

Nora Harrison Barkey ("Plaintiff") initiated this lawsuit by filing a Prisoner Civil Rights Complaint on October 30, 2007 alleging that employees of the Idaho Department of Corrections ("IDOC") and the Pocatello Women's Correctional Center ("PWCC")

violated her First, Fourth and Eighth Amendment rights. (Complaint, Dkt. 3.) Plaintiff filed an Amended Complaint (Dkt. 8) on April 18, 2008 to add claims for retaliation and with the intention of adding Brian Underwood as a Defendant.

An initial review of Plaintiff's claims was completed pursuant to 28 U.S.C. §1915, and an Initial Review Order was entered on May 16, 2008. The Initial Review Order allowed Plaintiff to proceed on her Eighth Amendment claim alleging that Plaintiff was subjected to "sexual misconduct" by Correctional Officer Melin and that Director Reinke was unresponsive to complaints about the sexual misconduct. Plaintiff was also allowed to proceed on her claim that she suffered retaliation. Plaintiff was not allowed to proceed on her Fourth Amendment claim alleging that only female correctional officers should be allowed to perform body searches on female inmates.

The Court granted Plaintiff's motion to appoint counsel on May 18, 2009. (Dkt. 26.) With the assistance of counsel, Plaintiff moved and was allowed to file a Second Amended Prisoner Civil Rights Complaint (Dkt. 34) on August 28, 2009. The Second Amended Complaint was intended to clarify Plaintiff's allegations in the first two complaints and include Brian Underwood as a Defendant. Plaintiff's Second Amended Complaint alleges violations of her First, Fourth, Eighth, and Fourteenth Amendment Rights.

The Plaintiff alleges the following facts in support of her claims. Between May 2006 until March 2007 Plaintiff was incarcerated at the East Boise Community Work Center ("EBCWC"), a minimum custody level facility which allowed inmates to maintain

employment off site. Plaintiff alleges that on or about March 31, 2007, Defendant James Melin, while on duty, sexually assaulted Plaintiff under the pretext of a cross gender body search. Defendants contend the search was performed because Defendant Melin saw Plaintiff place an object in her bra prior to entering the facility. After the alleged sexual assault, Plaintiff contends that Defendant Melin took other inappropriate actions which forced her to flee from EBCWC. First, Plaintiff alleges Defendant Melin wrongfully had Plaintiff strip searched by a female officer in order to retrieve the object suspected to be in Plaintiff's bra. The Court notes that the female officer performing the strip search did find and confiscate money that fell out of Plaintiff's bra, however, the amount of money confiscated is disputed. Further, Plaintiff alleges that Defendant Melin inappropriately placed her on room restriction, lied about the amount of money found in her bra in order to file a Disciplinary Offense Report ("DOR"), and threatened to rape her on the morning of April 1, 2007. Plaintiff alleges that based on these incidents, she decided not to return to the EBCWC after work the next day. On April 11, 2010, Plaintiff was located by the authorities and was taken back into custody.

At the time of Plaintiff's escape and in compliance with IDOC policy, Plaintiffs inmate trust account was suspended. The suspension of her account was not lifted until action regarding her DOR was complete. Plaintiff alleges that the suspension was lifted February 25, 2008. When the suspension was lifted, over $3000 that was in her account at the time of her escape was confiscated pursuant to IDOC policy. Further, Plaintiff contends that while her DOR was pending, she was repeatedly and unnecessarily

transferred between Ada County Jail and the Pocatello Women's Correctional Center ("PWCC") and wrongfully held in administrative segregation.

Plaintiff and Defendants filed cross motions for summary judgment on February 26, 2010. (Dkt. Nos. 46, 47). Defendants are seeking summary judgment on "a number" of Plaintiffs's claims based on Plaintiff's alleged failure to exhaust administrative remedies and on Plaintiffs inability to demonstrate violations of any constitutionally protected right or that Defendants' personally participated in the alleged violations. Plaintiff moved for summary judgment against Defendant Underwood on two claims: that the seizure of funds from her inmate trust account violated her Fourth Amendment rights and the wrongful transfers between PWCC and Ada County Jail as well as the seizure of funds constituted retaliation under the First Amendment. Because administrative exhaustion is a prerequisite to bringing a lawsuit under the Prison Litigation Reform Act ("PLRA"), the Court will address Defendants' exhaustion argument first and then the merits of the parties cross motions for summary judgment.

## EXHAUSTION

### A. Standard of Law

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison

officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion," *Jones*, 549 U.S. at 218.

By its plain terms, however, the PLRA requires prisoners to exhaust only those avenues of relief that are "available" to them. 42 U.S.C. § 1997a(e). When prison officials prevent a prisoner from using the correct channels to route a complaint, an administrative remedy that may be theoretically in place will not be available to the prisoner as a practical matter, and the failure to adhere to technical requirements will be excused. *Nuñez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Confusing or contradictory information given to a prisoner is also pertinent "because it informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).

A claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.

2002). The district court may consider matters outside of the pleadings and can resolve disputed issues of fact, if necessary. *Id*. Defendants bear the burden of raising and proving the absence of exhaustion. *Brown*, 422 F.3d at 936-37. Further, when a prisoner has not exhausted administrative remedies as to *any* claim before filing suit, the complaint must be dismissed and cannot be cured by an amendment after remedies have been exhausted. *See*, *e.g.*, *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002). Such a rule is consistent with the purpose of § 1997e(a), which is "to reduce the quantity and improve the quality of prisoner suits .... [by] afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).

## B. Idaho Department of Correction's Grievance Procedures

Ordinarily, a prisoner at the Pocatello Women's Correctional Facility ("PWCC") must complete the Idaho Department of Corrections Grievance Process which has consisted, despite multiple minor changes, of the following three steps: 1) the offender must seek an informal resolution of the matter by completing an Offender Concern Form; 2) the offender must complete a Grievance Form if informal resolution cannot be reached; and 3) the offender must file a Grievance Appeal. (Davis Aff. ¶4, Dkt. 47-9.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. *(Id.* at ¶ 5.) If the issue is not resolved, or the staff member identified does not respond within seven days, the prisoner must then complete a grievance form, attach a copy of the concern form, and file the grievance

within thirty days of the incident, however, an extension of time may be granted by the reviewing authority.[1] (*Id*. at ¶6.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within 10 days. (*Id*. at ¶ 6.)

After the staff member responds, the coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (*Id*. at ¶ 6.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority," which is usually the facility head. (*Id*. at ¶ 7.) The appellate authority has fourteen days to respond to the Grievance Appeal and return it to the grievance coordinator. (*Id.* at ¶7.) Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id*. at ¶ 15.)

Defendant alleges that although Plaintiff was aware of the grievance process, she failed to complete this process because she did not file a single grievance or grievance appeal with respect to any of the issues raised in her Second Amended Complaint. In response, Plaintiff contends that Defendants have not met their burden to demonstrate that Plaintiff did not exhaust her administrative remedies. Further, Plaintiff argues that the evidence produced by Defendants during discovery contradicts Defendants' exhaustion

---

[1] Prior to November 28, 2007, the Grievance Form was required to be filed within fifteen days of the incident. (Davis Aff. ¶6, Docket No. 57-9.)

argument because it demonstrates that Plaintiff contacted personnel at every level of the IDOC to resolve her issues and was denied relief. However, prior to addressing the merits of Defendants's exhaustion claims, the Court will first address Plaintiff's argument that Defendants should not be allowed to rely on the Affidavit of Michelle Davis (Dkt. 47-9) because she was never identified as a witness during discovery.

## C. Affidavit of Michelle Davis

Michelle Davis is the Grievance Coordinator for the PWCC and is therefore personally familiar with the IDOC Grievance Process. Ms. Davis' affidavit identifies the steps and the time frames involved in the IDOC Grievance Process. Further, Ms. Davis testified that the PWCC maintains a database that includes all of the processed grievances filed prior to November of 2007 and all of the grievances and grievance appeals filed since that date. After searching the database and reviewing her files, Ms. Davis found that Plaintiff had submitted eleven grievance forms, seven in 2009 and four in 2008 which she attached to her Affidavit. Ms. Davis only found three grievance appeal forms for grievances filed in 2009, and found no indication that Plaintiff completed the grievance process with respect to any grievance forms filed in 2007 or 2008. These forms were also attached to Ms. Davis' Affidavit. (Davis Aff., Dkt. 47-9.)

Plaintiff contests the Court's reliance on Ms. Davis' Affidavit because Ms. Davis was not identified as a witness during discovery and the Plaintiff has not had the

opportunity to develop the record with respect to the assertions in Ms. Davis' Affidavit.[2]

In response, Defendants contend that Plaintiff never introduced any interrogatory that sought Ms. Davis' identify and she was not included in initial disclosures because she was unknown to defense counsel at that time. Further, Defendants argue that Ms. Davis' Affidavit does not possess any personal information as to any of Plaintiff's allegations and her testimony was used solely to introduce IDOC policies regarding exhaustion and the documents contained in her grievance log. Finally, Defendants contend that Plaintiff has not sufficiently discredited the foundation of Ms. Davis' Affidavit as would be required under a motion to strike or moved for an extension of time to complete more discovery and take the deposition of Ms. Davis under Fed. R. Civ. P. 56(f), a motion Defendants contend, they would not have opposed.

The Court does find it troubling that Ms. Davis was not disclosed in discovery or that Defendants have offered no reason why their discovery responses were not supplemented to include Ms. Davis when her identify was discovered. Fed. R. Civ. P. 37(c)(1) states that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e) the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. However, it is within the Court's discretion to exclude evidence

_____

[2] Plaintiffs did not file a motion to strike Ms. Davis' Affidavit, or a motion for sanctions pursuant to Fed. R. Civ. P. 37, however, in the interest of judicial economy, the Court will address the issue herein.

under Rule 37.  *Tavis v. Knappenberger*, 87 Fed. Appx. 24, 2003 WL 22977459 (9 th Cir. 2003) (unpublished).  In exercising its discretion concerning exclusion, the court should consider the following factors: 1) the public's interest in expeditious resolution of litigation, 2) the court's need to manage its docket, 3) the risk of prejudice to other parties, 4) the public policy favoring disposition of cases on their merits, and 5) the availability of less drastic sanctions.  *Wendt v. Host International, Inc*. 125 F.3d 806, 814 (9th Cir. 1997).

After analyzing the above factors, the Court concludes that Ms. Davis' Affidavit should not be excluded.  Ms. Davis is the Grievance Coordinator for PWCC.  Her affidavit is intended only to introduce and explain the grievance procedures at the IDOC and PWCC and to introduce grievance records filed by Plaintiff that are contained in PWCC's database in the ordinary course of PWCC's regularly conducted business activities.  Ms. Davis is not testifying as to any facts surrounding the subject matter of any of these grievances; she is simply identifying what type of system PWCC uses to maintain the grievance records, what is included in the database, and the results of her search for grievance forms and appeals filed by Plaintiff.  Therefore, because Ms. Davis is only introducing documents that are kept in the ordinary course of business, the IDOC policies and the grievance records, the Court finds that Plaintiff would not be prejudiced by inclusion of these documents in the record without further discovery on the issue.

**D. Merits of Defendants' Exhaustion Argument**

Defendants argue that Plaintiff failed to exhaust her administrative remedies

because she failed to complete the grievance process with respect to any of the issues raised in her Second Amended Complaint. Plaintiff contends that documents produced by Defendants during discovery contradict this conclusion and that she filed at least fifty (50) concern, grievance, and appeal forms during 2007, 2008, and early 2009. Specifically, Plaintiff contends that she filed "forms" regarding excessive transfers, sexual assault, confiscation of her inmate funds, mishandling of her IRS check, and placement in administrative segregation.[3]

Despite Plaintiff's claims, the record does not contain any evidence that Plaintiff completed the grievance process related to these issues. There are significant numbers of concern forms in the record regarding the status of Plaintiff's inmate account, her custody status in administrative segregation, and the alleged sexual assault, however, there is no evidence produced by any party indicating that Plaintiff completed the grievance process with respect to these issues by filing a grievance and grievance appeal. To the contrary, there is evidence presented by Ms. Davis, that the only appealed grievance forms relate to Plaintiff's complaints regarding a written warning issued to Plaintiff for helping another inmate draft legal documents (Davis Aff. P. 66-67, Dkt. 47-9); an officer who allegedly

---

[3] Plaintiff's Second Amended Complaint also contains allegations relating to the Disciplinary Offense Report ("DOR") and the amended DOR and requests that the Court issue an Order directing that the finding of guilty be vacated. DORs cannot be grieved according to the IDOC policy and Defendants have not raised any issues regarding whether Plaintiff exhausted her administrative remedies with respect to the DORs. Therefore, the Court finds that Defendants has not met their burden with respect to exhaustion of the claims relating to the DORs. However, neither party has moved for summary judgment with respect to the DORs at this time.

wrongfully directed Plaintiff to be quiet (*Id.* at 80-81); and a grievance contesting the bottom bunk policy because she had trouble sleeping on a top bunk (*Id.* at 84-85.)[4] Further, the only grievance in the record that is even remotely related to the issues in the lawsuit was filed by Plaintiff on July 25, 2008, inquiring why her IRS stimulus check was sent back; however, no appeal followed the filing of this grievance form. (*Id.* at p. 94-95.) Based on the foregoing, the Court finds that Defendants have met their burden to demonstrate that Plaintiff did not complete the IDOC Grievance Process with respect to any of the issues raised in her Second Amended Complaint.

However, Courts have excused an inmate's failure to comply with technical exhaustion requirements in certain circumstances. For example, when prison officials prevent exhaustion from occurring through misconduct or failure to respond to a grievance within the policy time limits, inmates have been allowed to proceed. *Hoak v. Smith*, 2009 WL 3806336 (D. Idaho Nov. 9, 2009). Additionally, inmates have been allowed to proceed when no other relief is available at the agency level. In other words "[o]nce an agency has granted some relief and explained that no other relief is available, 'the administrative process has not been obstructed it has been exhausted.'" *Brown*, 422 F.3d at 936 *quoting Jasch v. Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002).

Plaintiff argues that under the circumstances presented in this case she should be

---

[4] Based on the Second Amended Complaint, it does not appear that these allegations form the basis of any of Plaintiff's claims. To the extent they do, the Court finds they have been exhausted.

allowed to proceed.  First, with respect to the suspension of her inmate account, Plaintiff

contends she "made every effort to address the suspension of her inmate account and

subsequent confiscation through the proper channels. Plaintiff sent letters directly to Ms.

Audens and to Director Reinke attempting to resolve the issues with her inmate account."

(Response p. 5, Docket No. 50; Reply p. 4, Docket No. 51.)  The record does contain

several concern forms regarding the status of Plaintiff's inmate account and letters

exchanged between Plaintiff and financial specialist Ms. Audens that were copied to

Director Reinke dealing with the suspension of her account and the abandonment of the

funds in it as a result of her escape.   (Murphy Decl. Exh A, B Dkt. 50-2.) These letters

discuss the suspension of Plaintiff's account noting that until the DOR was resolved, the

suspension could not be lifted.  (*Id*.)  The final letter in the record indicates that after the

DOR was resolved Plaintiff should contact the PWCC facility head to have the

suspension released. (*Id*. at Exh. B, p. 1.)  Although the Court notes that Plaintiff was also

instructed at one point to file another concern form regarding her account if she still had

questions (*Id*. at p. 8), the Court concludes that the letter directing her to contact the

PWCC facility head could be interpreted as directing her outside of the grievance system

to resolve her complaints regarding her inmate trust account.  Therefore, weighing the

facts in favor of the non-moving party, the Court concludes that exhaustion was excused

with respect to complaints about Plaintiff's inmate account.

Additionally, the Court finds that Plaintiff may also proceed on her sexual assault

claim because the prison provided an alternative administrative remedy, which Plaintiff

used.  On April 11, 2007, Plaintiff called the hotline established pursuant to the Prison

Rape Elimination Act ("PREA"). (Fruehling Aff. ¶ 3, Dkt. 47-1.)  Will Freuling, an

Investigator with the IDOC's Office of Professional Standards ("OPS") interviewed

Plaintiff later that day.  Plaintiff told Mr. Freuling that Defendant Melin "fondled and

groped" her when performing a pat search on March 31, 2007.  Plaintiff did not allege

that Defendant Melin threatened to rape her. (*Id.*, Exh. A, C.)  Mr. Freuhling completed a

formal investigation concluding that the only evidence supporting Plaintiff's allegations

was her own statement and submitted his report to the Review Panel who reviewed it and

dismissed the allegations against Defendant Melin. (*Id*. At ¶6).  On June 11, 2007,

Jeffrey Ray, a Public Information Officer at IDOC sent a letter to Plaintiff informing her

that after completing a thorough investigation, no evidence was found to support her

allegations of sexual assault against Defendant Melin. (Murphy Decl. Exh. A, Docket No.

50-3.)  Additionally, Plaintiff filed a concern form on June 20, 2008, inquiring who she

needed to talk to regarding her sexual assault claim and she was directed to discuss the

question with Mr. Freuling, the investigator who handled the case. (Id. Exh. A, p. 11,

Docket No. 50-3.)

Under the circumstances described above, the Court finds that because Plaintiff

used the PREA hotline, a formal investigation ensued and because Plaintiff was again

directed outside of the grievance system with her questions regarding the alleged sexual

assault , further exhaustion or appeal would have been unnecessary.  Plaintiff may

proceed on her claims related to the alleged sexual assault during the cross gender pat

search performed by Defendant Melin.

However, with respect to any retaliation or harassment claims against Defendant Melin as identified by Defendants in their Motion for Summary Judgment, the Court finds that the Plaintiff has not exhausted her claims. Specifically, Plaintiff has not exhausted her administrative remedies regarding any claims that Defendant Melin violated her constitutional rights by arranging for a female officer to strip search her, lying about the money in her bra in order to give Plaintiff a DOR, placing her on room restriction after the pat search, or removing her from her room and allegedly threatening her with rape on the morning of April 1, 2007. (Second Amended Complaint p. 3-4, Dkt. 34.) Although Plaintiff exhausted her administrative remedies with respect to the alleged sexual assault, there is no evidence in the record that she filed any concern forms, grievances, or grievance appeals regarding what appears to constitute allegations of a pattern of harassment by Defendant Melin. Additionally, based on Mr. Freuhling's interview notes, it appears that Plaintiff did not raise any of these other issues during the investigation and they were not otherwise included in its scope. (Freuhling Aff. p. 13-14, Dkt. 47-3.) Based on the foregoing, the Court finds that Plaintiff failed to exhaust her administrative remedies and cannot proceed against Defendant Melin based on any other claims except for claims relating to the alleged sexual assault.[5]

_____

[5] The Court does recognize the possibility that these issues were exhausted as part of Plaintiff's defense in the DOR appeal process; however, Plaintiff has provided no such supporting evidence in response to Defendants' contentions that she failed to exhaust her administrative remedies.

With respect to Plaintiff's First Amendment claim that she was retaliated against by being transferred repeatedly between Ada County Jail and PWCC for filing the current lawsuit, the Court finds that Plaintiff failed to exhaust her administrative remedies. As previously noted, it is clear from the forms included in the record that Plaintiff did not complete the IDOC Grievance Process with respect to this issue or with respect to her complaints about administrative segregation; however, Plaintiff argues that she should be allowed to proceed because her frequent transfers between Ada County Jail and PWCC inhibited her ability to complete the grievance process. Although the Court acknowledges that the misconduct of prison officials can make exhaustion of administrative remedies unnecessary, Plaintiff does not allege or provide any evidence that there was any misconduct by prison officials hindering her ability to complete the grievance process while in Ada County Jail. (Plaintiff's Reply p. 4-5, Dkt. 51.) Further, Plaintiff does not allege or offer any evidence that she attempted to follow the grievance procedures or request an extension of time to file a grievance or grievance appeal with respect to the transfers or the administrative segregation. Neither is there any indication that Plaintiff was referred outside of the grievance process to resolve her transfer and administrative segregation or custody status issues. Therefore, the Court finds that Plaintiff has not exhausted her administrative remedies with respect to claims based upon her repeated transfers and custody status.

Because Plaintiff's Second Amended Complaint includes both exhausted and unexhausted claims the Court has the option of dismissing the unexhausted claims and

analyzing the exhausted claims if the two are not intertwined. *Lira v. Herrera*, 427 F.3d. 1164 (9th Cir. 2005). Here, the Court has determined that Plaintiff will be allowed to proceed on her claims related to the alleged sexual assault by Defendant Melin and the suspension and seizure of funds from her inmate trust account. Therefore the Court will address the parties cross motions for summary judgment as they relate to Plaintiffs claims involving these allegations.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

Both Plaintiff and Defendants filed motions for summary judgment on February 26, 2010. Defendant requests summary judgment on "a number" of Plaintiff's claims arguing that Plaintiff has failed to satisfy the elements of a § 1983 claim because she cannot demonstrate that the named Defendants personally participated in violations of her civil rights.

Plaintiff moved for summary judgment on Counts I and II of her Second Amended Complaint against Defendant Underwood. According to Plaintiff's Memorandum in Support, Count I alleges that Defendant Underwood violated Plaintiff's Fourth Amendment rights by unreasonably suspending and seizing the money in Plaintiff's inmate trust account. Count II alleges that Defendant Underwood violated Plaintiffs First Amendment right by retaliating against her for filing the current lawsuit. Specifically, Plaintiff contends that Defendants retaliated by repeatedly transferring her between Ada County Jail and PWCC and suspending and seizing the funds in her inmate trust account. However, because Plaintiff failed to exhaust her administrative remedies with respect to

allegations that her frequent transfers constituted retaliation under the First Amendment, the Court will only address Count II with respect to Plaintiff's allegation that the suspension and seizure of funds from her inmate trust account also constituted retaliation for filing the current lawsuit.[6]

## A. Standard of Law

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not a "disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the

---

[6] Based on Plaintiff's Second Amended Complaint, it appears that she is alleging that all of Defendants' underlying actions are the basis for each of her constitutional claims because Plaintiff incorporates all of the factual allegations into each claim. However, for the purpose of addressing this motion, the Court will only address the issues raised by Plaintiff with respect to Counts I and II in her memorandum in support of her motion for summary judgment.

outcome of the case. *See id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). In addition, the Court "must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the 'depositions, answers to interrogatories, or admissions on file'" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324. For cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."*ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir.2006) (quoting *ACLU of Nev. v. City of Las*

Vegas, 333 F.3d 1092, 1097 (9th Cir.2003)).

Plaintiff brings her claims under 42 U.S.C. § 1983, the civil rights statute. To have a claim under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

## B. Plaintiff's Motion for Summary Judgment

### 1. Fourth Amendment Claim - Seizure of Property

The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" *U.S. v. Jacobsen,* 466 U.S. 109, 113-114 (1984). Under the Fourth Amendment a seizure of property "occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "A prisoner has a protected property interest in his prison trust account." *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985). However, the United States Supreme Court has also held that "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). Further, the United States Supreme Court noted, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id*. at 528 n.

8. The United States District Court for the District of Oregon in a recent unreported decision, found that this same reasoning applies by analogy to money in the prisoner trust accounts. *Hentz v. Ceniga*, 2009 WL 536846 (D. Or. March 3, 2009).

Plaintiff relies on *Hentz* to support her argument that suspension and confiscation of the funds in her trust account was unconstitutional. In *Hentz*, the court held that confiscation of funds in an inmate trust account that are proven to be contraband or the fruits of a crime may be constitutionally seized. *Id.* at *9. Further, the court held that temporarily freezing the trust account pending disposition of the criminal allegations was constitutional. *Id.* at *10. The Court acknowledges that unlike the case in *Hentz*, the funds at issue here may not have been related to criminal activity or confiscated to pay any restitution or fines ordered as a result of Plaintiff's escape. Finding this distinction significant, the Court concludes that the question of whether the suspension of an inmate trust account as well as the permanent confiscation of the funds from the account under these circumstances constitutes a violation of the Fourth Amendment is unclear.

Based on the foregoing, the Court will presently deny without prejudice Plaintiff's motion on this issue, and direct the parties to provide additional briefing to aid the Court in making a determination of whether Plaintiff's claim is subject to denial as a matter of law. The parties should brief whether a Fourth Amendment claim lies, given the scant authority for such a claim. In addition, if Plaintiff has stated a Fourth Amendment claim but the law does not appear clearly established at the time of the incident, Defendant may assert the qualified immunity defense raised in the Answer.

In addition, the parties should brief whether the claim is subject to denial based on

*Turner v. Safley*, 482 U.S. 78 (1987). In *Washington v. Harper*, 494 U.S. 210 (1990), the

Court explained:

> The legitimacy, and the necessity, of considering the State's interests in
> prison safety and security are well established by our cases. In *Turner v.
> Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *O'Lone v.
> Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987),
> we held that the proper standard for determining the validity of a prison
> regulation claimed to infringe on an inmate's constitutional rights is to ask
> whether the regulation is "reasonably related to legitimate penological
> interests." *Turner, supra*, 482 U.S., at 89, 107 S.Ct., at 2261. This is true
> even when the constitutional right claimed to have been infringed is
> fundamental, and the State under other circumstances would have been
> required to satisfy a more rigorous standard of review. *Estate of Shabazz,
> supra*, 482 U.S., at 349, 107 S.Ct., at 2404-05.

494 U.S. at 223.

The Court will permit one final round of summary judgment motions in this case

addressing these and any other remaining claims to be filed within the next thirty (30)

days.

## 2. First Amendment Retaliation Claim

To state a claim for retaliation under the First Amendment, an inmate must prove

that: 1) a state actor took some adverse action against her 2) because of 3) the prisoner's

protected conduct, and that such action 4) chilled the exercise of her First Amendment

rights and 5) the action did not reasonably advance a legitimate correctional goal. *Rhodes

v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005).

Plaintiff contends that Defendant Underwood chilled her First Amendment right of

access to the courts, counsel and other members of the community. Specifically, Plaintiff

contends that Defendant Underwood deprived her of this access by repeatedly and

unnecessarily transporting her across the state and by confiscating over $3000 from her

inmate trust account in retaliation for her informing him that she intended to file and did

file this lawsuit. As previously noted, Plaintiff failed to exhaust her administrative

remedies with respect to her repeated transfers and her custody status. Therefore, the

Court will only address the retaliation claim with respect to the suspension of Plaintiff's

inmate trust account.

Defendant Underwood argues that Plaintiff cannot prove an essential element of

her claim – that he acted "because of" Plaintiff's exercise of her right and/or intent to file

this lawsuit. (Underwood Response p. 6, Dkt. 49.) Plaintiff argues that the fact that her

account continued to be suspended despite her alleged notification of Defendant

Underwood that she needed the funds to file the present lawsuit is sufficient to satisfy this

causation requirement. (Plaintiff's Memo. p. 12, Dkt. 46-1.) The Court disagrees. Despite

the weak inference raised by the timing of the suspension,[7] Plaintiff has provided no

other evidence regarding Defendant Underwood's motivation in maintaining the

suspension of Plaintiff's account. Further, there is no evidence that Defendant

Underwood was personally responsible for decisions regarding Plaintiffs inmate account.

---

[7] Although the suspension was maintained during the time Plaintiff initiated the lawsuit,
the suspension was initiated in April 2007, several months prior to the date the lawsuit was filed
on October 30, 2007.

Instead, the Court finds that the evidence in the record supports the opposite conclusion, that the suspension on Plaintiff's inmate account was maintained in accordance with IDOC policy requiring the suspension to remain in place until issues surrounding Plaintiff's escape and DORs were resolved. (Audens Aff. ¶ 5, Dkt. 47-11.) Therefore, the Court finds that although an inference based on the timing of an alleged retaliatory action is sufficient to allow a claim to survive a motion to dismiss, more evidence is needed to warrant summary judgment in favor of Plaintiff on this issue. Plaintiff's motion for summary judgment on Count II of her complaint against Defendant Underwood is denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that Plaintiff cannot prove that the named Defendants personally participated in the alleged violations of Plaintiff's rights. "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Further, "a supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Id.* citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984). As the Defendants organized their motion for summary judgment by Defendant, the Court will address each Defendant in turn.

**A**. **Director Reinke**

In Plaintiff's Second Amended Complaint, Plaintiff alleges that Director Reinke

violated her constitutional rights by failing to promulgate and/or enforce the appropriate policies and procedures necessary to prevent the sexual assault of Plaintiff and failing to adequately investigate the alleged sexual assault of Plaintiff. (Second Amended Complaint, ¶¶ 51-54, Dkt. No. 34.) Specifically, Defendants have characterized the claims against Director Reinke to be: 1) allowing IDOC staff members to perform cross gender pat searches; and 2) failing to properly investigate the sexual assault allegedly committed by Defendant Melin.[8]

Cross gender pat searches that are sexual in nature or otherwise inappropriate may violate a plaintiff's constitutional rights under both the Fourth and Eighth Amendment. *See Byrd v. Maricopa County Sheriff's Dept*, 565 F.3d 1205, 1222 (9th Cir. 2009); *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (sexual abuse constitutes a violation of the Eighth Amendment because it is "inconsistent with contemporary standards of decency" and "repugnant to the conscience of mankind").

Based on the information in the record, the Court finds that there is an issue of fact with respect to the nature of Defendant Melin's cross gender pat search but that Plaintiff has failed to provide any evidence that demonstrates Defendant Reinke personally

---

[8] Plaintiff also contends that Director Reinke violated her rights by failing to prevent suspension of her inmate accounts and confiscating non-contraband funds. Defendants' Reply contends that Defendant Reinke did not personally participate in suspending of confiscating funds from Plaintiffs account, however, the Court finds that a material question of fact exists with respect to this issue based on Defendant Reinke being copied on all of the letters sent to Plaintiff regarding the suspension of her inmate trust account and the fact that one of the letters from Ms. Audens indicates that Director Reinke's office directed the letter to her for response. (Murphy Aff p. 5, Dkt. 50-3.)

participated in the allegedly inappropriate pat search, directed the pat search to occur, or knew about the inappropriate pat search by Defendant Melin and failed to prevent it as required under *Taylor*. 880 F.2d at1045.

Further, under the Eighth Amendment standard, there is no evidence that Defendant Reinke failed to protect Plaintiff from the alleged sexual assault.  In order to establish a claim that a prison administrator or supervisor failed to protect an inmate from harm, the inmate must show that the defendants were deliberately indifferent to the inmates needs." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted.)  Deliberate indifference exists when an official "knows of an disregards an excessive risk to health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id. At* 837.

The only evidence Plaintiff offers in support of her allegation that Defendant Reinke should have known about the risk and failed to prevent it that "three inmates at EBCWC have been sexually assaulted by corrections officers in the past five years.  The corrections officers have been removed from EBCWC, but no criminal charges were pursued and no support services were provided to the victims of these sexual assault." (Second Amended Complaint, ¶44, Dkt. 34.)  However, this past history of alleged sexual assaults is insufficient to have alerted Defendant Reinke to the possibility that Defendant Melin may pose a risk to the inmates at EBCWC requiring him to take action prior to the alleged sexual assault.  Therefore summary judgment is warranted in favor of Defendant

Reinke on any Fourth or Eighth Amendment claim that he is liable with respect to Defendant Melin's allegedly inappropriate pat search.

Plaintiff also alleged that Defendant Reinke failed to properly investigate the sexual assault allegedly committed by Defendant Melin. Defendants do not deny that Defendant Reinke had some personal participation in the investigation that occurred after Plaintiff's alleged sexual assault including that he approved the request for the investigation to proceed. (Freuhling Aff. ¶ 4, Dkt. 47-3.) However, to the extent Plaintiff is attempting to state a constitutional claim for failure to investigate, the Court finds this claim fails as a matter of law. "In general, a public officer does not owe a duty to one individual to investigate o prosecute a specific crime." *Rennick v. City of Cincinnati*, 2007 WL 2248818 (S.D. Ohio 2007) citing *Fulson v. City of Columbus*, 801 F.Supp. 1, 6 (S.D.Ohio 1992). Further, "Plaintiff has no constitutional right 'as a member of the public at large and as a victim' to have a particular person investigated." *Id. At *5 quoting Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1998); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Johnson v. Craft*, 673 F.Supp. 191, 193 (D. Miss. 1987) ("The decision to prosecute a particular crime is within the authority of the state, and there appears to be no federal constitutional right to have criminal wrongdoers brought to justice.").

Defendants also contend that there is no basis on which Plaintiff can state a claim for an Eighth Amendment violation for failure to protect based on the alleged

insufficiency of Defendant Reinke's investigation because Plaintiff has not been subjected to any further sexual assault as a result of the allegedly insufficient investigation. The Court agrees. Therefore, Defendant Reinke is entitled to summary judgment on any Fourth or Eighth Amendment claims that he participated in or failed to adequately investigate the alleged sexual assault.

## B. Warden Underwood

Defendants also move for summary judgment on behalf of Defendant Underwood on the grounds that Defendant Underwood did not personally participate in several alleged violations of Plaintiff's constitutional rights including: 1) the suspension of Plaintiffs inmate trust account and confiscation of over $3000; 2) restricting her access to the courts due to the numerous transfers between Ada County Jail and the PWCC; 3) physical injury occurring during one transfer; 4) prevention of meetings with attorney and denial of envelopes necessary to correspond with attorney; and 5) being subject to retaliation and harassment by a number of male correctional officers. (Defendants Memo p. 10, Dkt. 47-2.) As Plaintiff has only exhausted her administrative remedies with respect to her claims based on the alleged sexual assault and the confiscation of funds from her inmate trust account the Court will only address Defendant Underwood's involvement in these allegations.[9]

---

[9] Based on the briefing it appears that Plaintiff is not alleging that Defendant Underwood is liable for the alleged sexual assault under §1983. However, the Court finds that to the extent Plaintiff is attempting to allege some responsibility on the part of Defendant Underwood, that claim seems implausible as the alleged sexual assault occurred while Plaintiff was housed at the EBCWC, not the PWCC where Defendant Underwood was the warden at the time this lawsuit

Regarding the suspension and confiscation of funds from the Plaintiff's inmate account, the Court finds that there is a genuine issue of material fact regarding whether Defendant Underwood personally participated in the seizure of Plaintiff's inmate trust account and the confiscation of funds in the account at the time of Plaintiff's escape.

Plaintiff had addressed several concern forms regarding suspension of her inmate trust account to Defendant Underwood and she submitted an affidavit stating that she discussed the issue with Defendant Underwood several times and he indicated that he would get the suspension lifted. (Plaintiff's Response, p. 9 Dkt. 50; Barkey Decl. ¶9, Dkt. 46-3.) Further, evidence in the record, including the letter sent to Plaintiff by Kevin Butler regarding the status of her inmate account as well as the IDOC's policy regarding prisoner property both indicate that the facility head is responsible for decisions made regarding suspension and confiscation of funds in an inmate trust account. (Murphy Decl Exh. C, Dkt. 46-7; Murphy Decl. Exh A, Dkt. 51-1.) In response, Defendant Underwood contends that he was not responsible for, nor did he order the suspension of Plaintiff's account or the confiscating money from the inmate trust account. Instead, Defendant Underwood stated that he understood Ms. Audens, financial specialist at IDOC, was responsible for suspending, re-activating, and confiscating money from Plaintiff's inmate trust account. (Second Underwood Aff. ¶ 3,4, Dkt. 49-1.)

Based on the foregoing, the Court concludes that an issue of material fact remains

was initiated. Further, similar to the analysis with respect to Defendant Reinke, Plaintiff has not alleged nor offered any evidence that Defendant Underwood somehow knew about the assault or that Defendant Melin posed a substantial risk to Plaintiff or other inmates.

with respect to Defendant Underwood's involvement in the suspension and confiscation of funds in Plaintiff's inmate trust account. Therefore, the Court finds that Defendants' motion for summary judgment with respect to this issue must be denied.

## C. Correctional Officer James Melin

Plaintiff's Second Amended Complaint alleges that Defendant Melin violated Plaintiff's constitutional rights by: 1) sexually assaulting her during a pat search on March 31, 2007; 2) arranging for a female staff member to strip search her after the pat search and the morning after; 3) lying about the amount of money found in her bra in order to give her a DOR; 4) placing her on "room restriction" after the pat search; and 5) removing her from her room and threatening her with rape on the morning of April 1, 2007. (Second Amended Complaint, Dkt. 34.)

Defendants do not argue that summary judgment is warranted on Plaintiff's allegations of sexual assault during the cross gender pat search. Therefore, the Court will not grant summary judgment on this claim against Defendant Melin.[10]

Finally, Defendants contend that summary judgment is warranted with respect to Plaintiff's other allegations because no constitutional violation has been alleged and all actions taken by Defendant Melin furthered legitimate penological interests. Plaintiff

---

[10] Defendants also contend that the Defendant Melin is entitled to qualified immunity for any allegation that a properly performed cross body pat search violates her constitutional rights under the Fourth Amendment. Plaintiff appears to concede in her Response (Dkt. 50) that the Second Amended Complaint only includes allegations regarding an inappropriate pat search. Therefore, the Court will not address whether an appropriate cross gender pat search violates the Fourth Amendment at this time.

responded that because she filed her own statement of facts, there are genuine issues of fact related to Defendant Melin's actions. However, as Plaintiff has failed to exhaust her administrative remedies with respect to any of the other allegations included in the Second Amended Complaint against Defendant Melin, the Court need not address this issue further.

## CONCLUSION

Based on the foregoing the Court finds that Plaintiff's Motion for Summary Judgment on the First Amendment claim is denied. Plaintiff's Motion for Summary Judgment on the Fourth Amendment claim is denied without prejudice. Defendants' Motion for Summary Judgment is granted in part and denied in part. Specifically, summary judgment is granted in favor of Defendants on any claim arising out of Plaintiff's transfers between Ada County Jail and PWCC, her allegations regarding administrative segregation, her pattern of harassment claims against Defendant Melin, and her sexual assault claims against Defendant Reinke. Summary judgment is denied in favor of either party on Plaintiff's claims regarding the suspension and seizure of funds in her inmate trust account, the alleged sexual assault during the cross gender pat search against Defendant Melin, and any claims relating to her DORs.

Based on the foregoing, and the lack of clarity in the Second Amended Complaint as to what claims remain, the Court hereby orders the parties to confer to determine what claims remain at issue in this action. To the extent either party believes summary judgment may be warranted on any of these claims, the Court orders the parties to file

their motions for summary judgment not later than thirty (30) days after the date of this

Order. This briefing shall include further discussion of the Fourth Amendment seizure

claim as discussed above.

## ORDER

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment (Dkt. 46) is **DENIED**.

2.      Defendant's Motion for Summary Judgment (Dkt. 47) is **GRANTED IN**

**PART AND DENIED IN PART.**

DATED:  **September 30, 2010**

B. LYNN WINMILL
Chief Judge
United States District Court